# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS VILLEGAS,<br>　　　　　　　Plaintiff,<br>　　v.<br>EDWARD A. SNOW, in individual and representative capacity as trustee of The Snow Family Trust dated July 8, 2015; KIET T. SNOW, in individual and representative capacity as trustee of The Snow Family Trust dated July 8, 2015; and DOES 1 through 10, inclusive.<br>　　　　　　　Defendants. | CASE NO: 2:19-cv-10768-SK<br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

## I.
## INTRODUCTION

　　On November 9, 2021, the Court held a bench trial on Plaintiff Luis Villegas's action against Defendants Edward A. Snow and Kiet T. Snow for violations of the Americans with Disabilities Act ("ADA") found on property they own and operate. In accordance with Federal Rule of Civil Procedure 52(a), the Court concludes based on the material facts outlined below that: (1) Plaintiff has met his burden of proving each element of a disability discrimination claim under the ADA; (2) Defendants have established no affirmative defenses excusing their non-compliance with the ADA; and (3) Plaintiff is entitled to injunctive relief under the ADA, including as to mobility barriers he did not personally encounter.

## II.
## **FACTUAL FINDINGS**

Based on the evidence adduced at trial, including witness declarations, live testimony, and the parties' exhibits, together with the parties' stipulations, concessions, or admissions in the final Pretrial Conference Order, the Court finds that:

1. In July 2019, Defendants were the owners of the real property located at 299 E. Artesia Blvd., Long Beach, California, including Eddie's Liquor ("Store") and the adjoining parking lot. (ECF 38 at 4; ECF 41 at 2).

2. Defendants currently own that property (built in 1973) and operate the Store—a facility open to the public and a place of public accommodation. (ECF 38 at 4; ECF 41 at 2). Defendant Edward A. Snow estimates that he has purchased, operated, and sold more than 100 similar liquor or convenience stores in his lifetime. (ECF 48).

3. In July 2019, Plaintiff, who is disabled and uses a wheelchair, visited the Store to buy a drink and purchase a lottery ticket. (ECF 38 at 4; ECF 43 at 2).

4. When Plaintiff arrived at the Store, he backed his car into the space then reserved for disabled patrons, as depicted in Figure 1 below, so that the access aisle was on the driver's side of the car. (ECF 43 at 2; ECF 48).


*Figure 1* **(Exh. 3-H)**

5. Plaintiff exited his car and proceeded to the Store, using an uneven and cracked access aisle, with a ramp built into it, as depicted in Figures 2 and 3 below. (ECF 43 at 2).


*Figure 2* **(Exh. 3-I)**


*Figure 3* **(Exh. 3-J)**

6. The running slope[1] of the ramp was 5%, and the running and cross slopes[2] of the portions of the access aisle without the ramp were 3%. (ECF 44 at 3).

7. Once inside the store, Plaintiff bought a drink, but the lottery machine was not working, so he decided to go to a market across the street to buy a lottery ticket. (ECF 43 at 2; ECF 43-2 at 2). All available routes from the Store to the public sidewalk, however, required him to travel through vehicular lanes in the Store's parking lot with no crosswalk to caution drivers to be alert for pedestrians. (ECF 43 at 3). During Plaintiff's travel from the Store to the market across the street, he personally encountered the route's conditions. (*Id.*).

8. Despite conditions that made it difficult for Plaintiff to access the Store, he intends to return to the Store once the property provides proper accessibility. (ECF 38 at 4; ECF 48).

9. Defendant Edward A. Snow, who uses a walker, and his son Edward C. Snow, who uses a wheelchair, regularly enter the Store and have had no problems accessing the Store. (ECF 41-2 at 1-2; ECF 47 at 1-2).

10. Since Plaintiff's visit to the Store, Defendants relocated the accessible parking space to another side of the Store, as shown in Figures 4 and 5 below, but without the help of a Certified Access Specialist. (ECF 47 at 2; ECF 48).

---

[1] Running slope is the slope "parallel to the direction of travel." 2010 ADA Standards ("ADAS") § 106.5.

[2] Cross slope is the slope "perpendicular to the direction of travel." ADAS § 106.5.



*Figure 4* **(Exh. 52)**



*Figure 5* **(Exh. 54)**

11. The surface of the newly installed parking space and access aisle, along with the path of travel from the newly installed ramp to the public sidewalk, currently have cracks and openings, causing the ground to be uneven, as depicted in Figure 6 below. (ECF 45 at 4; ECF 48).



*Figure 6* (Exh. 55)

12. The running and cross slopes of the relocated parking space and access aisle exceed 2.083%. (ECF 45 at 4). The dimensions of the curb ramp include a running slope of 13.8%, a cross slope between 2.2% and 2.3%, and side flares (the yellow painted sides of the ramp as shown in Figure 5 above) with slopes of 36.4% and 32.6%. (*Id.* at 3-4).

13. Sometime after relocating the accessible parking space, Defendants erected a two-sided concrete structure around the Store's garbage bins and utility meters that encroached onto the access aisle, as shown above in Figure 4. (ECF 48).

14. The curb ramp from the relocated accessible parking space connects the parking lot to the path of travel to the Store's entrance, where the clear floor space in front, as depicted in Figure 7 below, has a slope of 2.2%. (ECF 45 at 4).



*Figure 7* (Exh. 101)

15.　At the time of Plaintiff's Certified Access Specialist's visit to the Store in January 2021, the signage directing disabled patrons to the accessible entry into the Store was inadequate. (ECF 45 at 3).

16.　Defendants believe that the parking lot, including the newly installed parking space and access aisle, is too difficult and too expensive to level any further because water drainage away from the building is only possible at the current grade. (ECF 47 at 3; ECF 48).

17.　Plaintiff's contractor-expert estimates, based on the photographs he was provided from the Certified Access Specialist's visit, that the total cost to remedy the ADA violations involving the Store's accessible parking and path of travel to the public sidewalk is approximately $6,750. (ECF 39 at 3; ECF 48).

18.　Defendants believe that the cost of alterations needed to bring the parking lot into complete compliance with the ADA is much more than that estimated by Plaintiff's contractor expert and would, in any event, provide a poor return on investment. (ECF 48).

7

## III.
## **LEGAL CONCLUSIONS**

1. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

2. To prevail on his ADA claim of disability discrimination, Plaintiff must prove that: (1) he is disabled within the meaning of the ADA; (2) Defendants own, lease, or operate a place of public accommodation; and (3) Defendants discriminated against him by denying him public accommodations because of his disability. *See Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1033 (9th Cir. 2020).

3. The parties stipulated that Plaintiff is disabled within the meaning of the ADA and that the Store is a place of public accommodation. (ECF 38 at 4). *See* 42 U.S.C. §§ 12102(1)(A), 12181(7)(E). So only the third element is at issue: whether the alleged barriers at the Store constitute discrimination under the ADA. This element is met if the property violates applicable accessibility standards, including retention of noncompliant architectural barriers. *See Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011).

4. The accessibility requirements of the ADA vary based on when the facility was originally constructed. *See id.* For facilities in existence before 1993, discrimination includes "a failure to remove architectural barriers . . . where such removal is readily achievable." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (quoting 42 U.S.C.

§ 12182(b)(2)(A)(iv)). For facilities altered after January 26, 1992, the altered portion must, "to the maximum extent feasible," be "readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 36.402(a).

    5.    Although Defendants' property was built in 1973, Defendants offered no evidence to refute Plaintiff's evidence that removal of the original barriers was readily achievable. To the contrary, they proved that it was readily achievable by removing the original ramp, access aisle, and path of travel and creating a new (even if noncompliant) ramp, access aisle, and path of travel. *Cf. Montano v. Bonnie Brae Convalescent Hosp., Inc.*, 79 F. Supp. 3d 1120, 1131 (C.D. Cal. 2015); *Johnson v. Wayside Prop., Inc.*, 41 F. Supp. 3d 973, 978 (E.D. Cal. 2014).

    6.    Nor did Defendants present any evidence to refute Plaintiff's expert evidence that the architectural barriers he encountered during his visit in 2019 violated the binding ADA Accessibility Guidelines for accessible parking spaces. (ECF 39 at 9; ECF 43 at 2-3; ECF 44 at 3).

    7.    Instead, Defendants' only defense is that the ADA violations on their property were and are "de minimus." (ECF 41 at 1-2, 8; ECF 47 at 2-3). As proof, they claim that Defendant Edward A. Snow and his son, who are both disabled with mobility impairments, can access the Store and have done so for many years. (ECF 38 at 6; ECF 41-2 at 2). Defendants also claim that meeting the required standards would impair water drainage from the property. (ECF 47 at 3; ECF 48).

    8.    But, as a matter of law, "neither substantial compliance nor 'obedience to the spirit of the ADA' are viable defenses to ADA liability." *Hernandez v. Polanco Enters., Inc.*, 19 F. Supp. 3d 918, 933 (N.D. Cal. 2013). And the maximum allowable slope (of 2.083%) under the ADA

Standards "allows sufficient slope for drainage." ADAS § 502.4 Adv. Note.

9.  For all these reasons, Plaintiff has proven that Defendants discriminated against him under the ADA by depriving him of full and equal access to a place of public accommodation.

10.  Because Plaintiff has standing to challenge the barriers he personally encountered at the Store, he has standing to challenge any remaining barriers at the property that he has identified and relate to his disability.  *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008).

11.  Defendants do not dispute that they altered the relevant portions of the property after Plaintiff's visit in 2019 (ECF 38 at 6; ECF 47 at 2-3), so the "alteration provision" of the ADA applies to any remaining architectural barriers.

12.  To meet the accessibility standards required by the "alteration provision," alterations made after March 2012 must comply with the 2010 ADA Standards.  *See Moeller*, 816 F. Supp. 2d at 847; 28 C.F.R. § 36.406(a).

13.  Under the "alteration provision," a facility must be "readily accessible to and usable by individuals with disabilities" "to the maximum extent feasible." 28 C.F.R. § 36.402(a).

14.  This provision "does not ask the court to make a judgment involving costs and benefits.  Instead it requires accessibility except where providing it would be 'virtually impossible' in light of the 'nature of an existing facility.'" *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 371 (2d Cir. 2008) (quoting 28 C.F.R. § 36.402(c)); *see Kirola v. City and Cnty. of San Francisco*, 860 F.3d 1164, 1181 (9th Cir. 2017) ("[A]voiding 'minor variations' is exactly what [the ADA Standards] require[] of new or altered

facilities.").

15.     Defendants agree that the 2010 ADA Standards apply to the remaining access barriers on their property.  (ECF 38 at 7).  But they presented no evidence that bringing their property into compliance with these Standards would be virtually impossible.  *See* 28 C.F.R. § 36.402(c).

16.     Defendants must therefore bring theses portions of the property into compliance with the ADA: (1) the signage directing disabled patrons to the accessible entrance (if not already done); (2) the accessible path of travel from the Store to the public sidewalk; (3) the wheelchair accessible parking space and access aisle; and (4) the clear space in front of the Store's entrance.  *See* ADAS §§ 302.1, 502.4, 404.2.4.4, 405.2, 405.3, 406.3.

## IV.
## CONCLUSION

Based on these findings of fact and conclusions of law, judgment will be entered in Plaintiff's favor, and Defendants will be ordered to bring the named barriers into compliance with the ADA.

DATED: November 15, 2021

_____
STEVE KIM
U.S. MAGISTRATE JUDGE